[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATIONS TO VACATE AND TO CONFIRMARBITRATION AWARD
In these two actions the applicant, Protective Services Employees Coalition IAFF, AFL-CIO, (Protective) seeks to confirm or modify or correct an arbitration award and the State of Connecticut Department of Liquor Control (State) seeks to vacate it.
Facts
From July 1, 1990 through June 30, 1993, (extended to June 30, 1994) the State and the union had in effect a collective bargaining agreement (Contract).[1] A copy of the Contract is part of our record as Ex. B.
Article 8, Section Three of the Contract is as follows:
 Section Three. No new material derogatory to an employee hereunder shall be placed in his/her CT Page 12494 personnel file unless the employee has had an opportunity to sign it (indicating receipt of such material) and has received a concurrent copy of such material. If the employee refuses to sign, a union steward shall sign the material (indicating receipt) and be provided a copy.
 An employee may file a written rebuttal to any such derogatory material. Request to expunge such material may be made when:
 (a) The derogatory material has not been merged in the annual service rating (No. 1) following its placement in the Personnel File.
 (b) No similar disciplinary action has been taken.
 (c) The next annual service rating period (No. 2) has passed without subsequent recording of such material.
 An employee may file a grievance objecting to any derogatory material placed in his/her personnel file, provided, however, no such grievance shall be arbitrable unless it is alleged by the State employer as just causes for discipline.
Article 16 of the Contract contained a grievance procedure, Section Nine of which provided for final and binding arbitration as the last step in the procedure. Section Five of Article 16 also provided:
 Section Five. A grievance shall be deemed waived unless submitted at Step I within thirty (30) days from the date of the cause of the grievance or within thirty (3) days from the date the grievant or any Union representative or steward knew or through reasonable diligence should have known of the grievance.
In July, 1992, Ricky Robinson, (Grievant) an employee of the State, was covered by the Contract and filed a grievance. That grievance claimed that the State had violated Article 8, Section Three of the Contract and the terms of a separate "Stipulated CT Page 12495 Agreement" which he had entered into with the State in September, 1989. That Stipulated Agreement provided in relevant part:
 This agreement is made as a result of the Department of Liquor Control investigation and prediscipline meetings concerning allegations against Ricky Robinson in regards to unauthorized use of a state motor vehicle. This agreement is without prejudice or precedent.
 September 28th, and 29th, 1989, Ricky Robinson will report for duty in the office to catch up any work and turn in any outstanding reports.
 Effective October 2d 1989, Ricky Robinson is suspended without pay for 14 days.
 Effective October 16th, 1989, Ricky Robinson will report back to duty in the office. At that time he will be removed from portal to portal pay, will not have use of a State vehicle, and will not receive home or telephone allowances. He will be monitored during this time and any infractions may result in termination. After a period of three to four months this will be reviewed, and if his performance has been satisfactory he will have his portal to portal pay and benefits restored.
 Ricky Robinson will be required to have his doctor submit to Edward Jadovich at least monthly confidential reports on his condition.
 All parties agree that if this investigation is not used in the next performance evaluation all records of the investigation will be removed from agency files.
The grievance further claimed that, by signing the Stipulated Agreement, the State had agreed not to use the suspension referred to in any further disciplinary proceedings against the Grievant, provided that the Grievant received a good performance appraisal in the year subsequent to the date of the Stipulated Agreement.
In September of October, 1990, the Grievant had his next CT Page 12496 performance appraisal and it was a good appraisal, and nothing about the prior charges was there used.
In October, 1990, Liquor Department Business Manager Thomas Ort (Ort) removed from Grievant's file all records and documents, relating to the investigation and the charges brought against him, but Ort left the Stipulated Agreement and a Personnel Form 201 in the file. This document is a standard State form which recorded Robinson's periods of suspension and reinstatement in September and October 1989.
In May, 1991, Grievant submitted a written request to Ort to remove the Stipulated Agreement from his personnel file. Ort denied Grievant's request in writing stating that ". . . the Stipulated Agreement of September 1989 will . . . remain. The investigation was not used as part of your next service rating and the investigation was removed as agreed upon. The Stipulated Agreement is a matter of record."
In July, 1992, the State offered the Stipulated Agreement as an exhibit in a disciplinary grievance arbitration hearing concerning discipline taken against Grievant to show Grievant's work history and progressive discipline. Thereafter, the Union filed the grievance which resulted in the instant arbitration proceeding.
The issue submitted to the single arbitrator was as follows:
 Is OLR case No. 09-2502 arbitrable? If so, did the Department of Liquor Control violate Article 8, Section 3 of the NP-5 contract? If so, what shall be the remedy consistent with the terms of the NP-5 contract?
On or about January 18, 1994, the arbitrator rendered his award which is as follows:
AWARD OF ARBITRATOR
OLR Case No. 09-2502 is arbitrable.
 The Department of Liquor Control violated Article 8, Section Three of the NP-5 contract.
The remedy is: CT Page 12497
 (1) The "Stipulated Agreement" (J. Ex. 3) shall be expunged from agency files and not used in any proceedings against Ricky Robinson.
 (2) The Form 201 shall be redacted to remove any indication of disciplinary suspension in September/October 1989. This may be accomplished by changing inappropriate references to "approved leave with/without pay." The Form 201 shall not be used in any proceedings against Ricky Robinson.
At the arbitration, the State claimed the Grievance was not arbitrable because it was not timely filed within 30 days after the grievant learned that the settlement agreement was still in his personnel file.
The State also claimed that it had removed all records which it was required to remove by the Stipulated Agreement and the records retained did not contain derogatory material. The arbitrator found that the Stipulated Agreement contained derogatory material. There is no question that material in that agreement is derogatory.
The arbitrator found the State had violated the terms of the Contracts when it refused to remove the Stipulated Agreement and the disciplinary suspension Form 201 from the grievant's file and specifically that those refusals violated Article 8, Section Three of the Contracts.
Protective has filed an application to confirm the award or, in the alternative, to modify "and/or correct" the award and the State has filed a Motion To Vacate the award.
On or about March 14, 1994, the court ordered the consolidation of the actions.
Claims for Vacation
The State makes only two major claims. The first is that the award ordering that the Stipulated Agreement "be expunged from agency files" and that Form 201 "be redacted to remove any indications of disciplinary suspension in September/October 1989" is an order to destroy public records and thus void underLieberman v. State Board of Labor Relations, 216 Conn. 253. CT Page 12498
The second claim is that the award was not based on the Contracts but rather "it is based solely on a collateral agreement" i.e., the Stipulated Agreement.
The claim of late filing was thoroughly addressed by the arbitrator. The State does not mention it in the State's brief of June 30, 1994 and thus the court considers it abandoned.
Law
 I. Order to Destroy Public Records
The order is not to destroy the Stipulated Agreement but that it "shall be expunged from agency files and not used in any proceeding against" grievant. If the arbitrator had meant "destroy" he would not have needed the words "from agency files." Furthermore, it is questionable whether he would have had to forbid the use of the document that was destroyed.[2]
The award is not null and void.
Article 8 of the Contract is entitled "Personnel Records." Section Three thereof reads as follows:
 Article 8 Personnel Records
 * * *
 Section Three. No new material derogatory to an employee hereunder shall be placed in his/her personnel file unless the employee has had an opportunity to sign it (indicating receipt of such material) and has received a concurrent copy of such material. If the employee refuses to sign, a union steward shall sign the material (indicating receipt) and be provided a copy.
 An employee may file a written rebuttal to any such derogatory material. Request to expunge such material may be made when:
 (a) The derogatory material has not been merged in the annual service rating (No. 1) CT Page 12499 following its placement in the Personnel File.
 (b) No similar disciplinary action has been taken.
 (c) The next annual service rating period (No. 2) has passed without subsequent recording of such material.
 An employee may file a grievance objecting to any derogatory material placed in his/her personnel file, provided, however, no such grievance shall be arbitrable unless it is alleged by the State employer as just causes for discipline.
It is that section upon which the submission is built.[3] The award does not exceed the submission but might be interpreted to order destruction which might be illegal. For that reason the court will modify the award.
Whether the award as rendered does not conform to the submission because the arbitrator "based his entire award on the terms of the Stipulated Agreement, rather than on the terms of the Contract," States Reply Brief p. 17, is not here in issue because the State waived any objection to that basis for the award by nature of the facts to which it stipulated at the arbitration. State's Reply Brief p. 12.
Regardless of that this court orders the award modified and corrected in its last two paragraphs to state that "(1) The Stipulated Agreement (J. Ex. 3) shall be removed from grievant's personnel file and not used in any proceedings against Ricky Robinson; (2) The Form 201 retained in grievant's personal file shall be redacted to remove any indication of disciplinary suspension in September/October 1989. This may be accomplished by changing inappropriate references to "`approved leave with/without pay.'" The Form 201 shall not be used in any proceedings against Ricky Robinson."
As modified the award is still within the submission.
Both documents in their original configurations may be placed in and with other written records maintained by the State on the grievant. The Contract permits this Art. 8, §§ 1 and 4. CT Page 12500
This final result works no injustice.
II. Award Not Based on Contract
The submission does not mention the Stipulated Agreement. However, it is clear from the arbitrator's recitation of the case in his opinion pages 4-10; his summary of the parties' position on page 11 and his discussion on pages 12 and 13 that the entire matter revolved around the Stipulated Agreement and how it was to be interpreted.
The court finds no objections from the State to this consideration of the Stipulated Agreement by the arbitrator or his use of it in his opinion and award. The arbitrator's summary of the State's position, page 11, supports this. In the State's Reply Brief of July 13, 1994, it is specifically stated that "the facts as stipulated by the parties in the arbitration proceeding demonstrate the need for an order concerning the use of the Stipulated Agreement," p. 12.
The arbitrator made his decision based on the Contract. The Stipulated Agreement and its terms were only the evidence of the violation of the Contract.
III. Legislative Approval
The State makes a passing conflicting claim that a) the Stipulated Agreement is so much a part of the Contract that it had to be approved by the legislature under C.G.S. § 5-278, and b) that under the arbitrator based his award on the "collateral" Stipulated Agreement and thus his award does not "draw" its essence from the Contract.
First, the Stipulated Agreement is simply the written document evidencing a negotiated settlement as is allowed by the Contract. Art. 16, § 2, 3, 4, 6 (Steps 2, 3 and 4).
Second, the legislature approved the Contract with all of that language expecting settlements.
Third, the law of this state encourages settlements. Practice Book § 265a.
Finally, under the State's interpretation followed to its conclusion there could be no settlement of a grievance. CT Page 12501
We do have a very specific statute which limits State collective bargaining settlement agreements and in that regard the State cites Connecticut Employees Union Independent, Inc. v.Board of Labor Relations, 43 Conn. Sup. 1. In that action the Board held that a settlement agreement concerning a grievance was a "supplemental understanding" and thus subject to legislative approval under C.G.S. § 5-278 (b). The pertinent part of that subsection is as follows: "Any supplemental understanding reached between [an employee organization and a state employer representative] containing provisions which would supersede any provision of the general statutes or any regulation of any state agency or would require additional state funding shall be submitted to the general assembly for approval. . ."
The court sustained the Board's interpretation of that "supplemental understanding" holding that the settlement "indisputably conflicted with the overtime pay limitations in § 5-245 (b)" and was at variance with the collective bargaining agreement itself. That is not our situation. The arbitrator did not find a conflict with any statute nor with the Contract itself. We have no statutory or contractual conflict here.
The State does mention that the award "orders relief that is inconsistent with the terms of the Contract." This is merely a restatement of the State's public policy arguments about destruction of records.
The application to correct or modify is granted as stated above.
The application to vacate is denied.
N. O'Neill, J.