[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 8404
The plaintiff Bell Atlantic NYNEX Mobile, Inc. appeals from a decision of the defendant Department of Public Utility Control (DPUC) concluding that all telecommunication carriers must share in the costs of providing telecommunications relay service (TRS). The plaintiff is the general partner of a non-wireline cellular mobile telecommunications provider, Cellco Partnership, and is licensed by the Federal Communications Commission (FCC) as a provider of wireless commercial mobile radio service (CMRS). The defendant DPUC is a state agency regulating and supervising public service companies providing service to customers in Connecticut pursuant to Title 16 of the Connecticut General Statutes. The telecommunications relay service enables telephone communication between a hearing or speech impaired person using a text telephone or a telecommunications device for the deaf (TDD) and a person using a voice telephone.
This appeal arises out of a proceeding before the DPUC to extend a contract between Southern New England Telephone Company and Sprint Communications Company L.P. for Sprint to continue to provide the telecommunications relay service in Connecticut. After awarding the contract to Sprint in February 1997,[1] the DPUC continued the proceedings and held public hearings on April 15, 1997 and May 8, 1997 to determine the cost of providing the service and to assess against each telecommunications carrier the appropriate fee to recover the annual costs of providing TRS in the state. (Return of Record (ROR), Decision, p. 2; Item V-1.) On May 22, 1997, the DPUC issued a draft decision, to which the parties submitted written exceptions. On June 11, 1997, the DPUC issued its final decision concluding,
 The Department hereby awards the Connecticut TRS contract to Sprint for the period July 1, 1997, through June 30, 2002, to provide intrastate TRS including the Optional Requirements as discussed above. All service providers currently providing telecommunications services in Connecticut as of January 31, 1997, will be responsible for a portion of the total TRS costs incurred by Sprint during this period and shall remit payment to the Company within 30 days of receipt of the monthly relay bill. On an annual basis, the Department will reopen this proceeding to include any newly certified intrastate telecommunications service providers into the TRS funding mechanism so that they too can share in funding the costs of providing TRS. During these reopened proceedings, the Department will also review Sprint's performance over the previous year, the estimated Relay costs for the CT Page 8405 next fiscal year and entertain requests to modify the existing contract to include the offering of new services (e.g.., 900/976, Speech-to-Speech).
(ROR, Decision, p. 14.) In assessing each telecommunications service provider's portion of costs, the DPUC determined that such an assessment would be based upon proportionate market share, measured by total intrastate revenues. (ROR, Decision, p. 8.)
The plaintiff raises three arguments in its appeal from this decision. First, it argues that this assessment of costs on the plaintiff and other cellular providers violates federal law which limits state regulation of cellular service. Second, it argues that the assessment of costs violates the federal law because it is not competitively neutral. Finally, it claims that the DPUC has no authority under Connecticut law to impose the cost recovery funding requirement on the plaintiff and other cellular providers.
Before addressing the merits of the appeal the court turns to the issue of aggrievement. Under General Statutes § 16-35, "any person, including but not limited to a company, town, city, borough or corporation aggrieved by an order, authorization or decision by the Department of Utility Control. . . may appeal therefrom in accordance with the provisions of section 4-183." Under General Statutes § 4-183, a person who is aggrieved may appeal pursuant to its provisions. The court finds that the plaintiff, who was a party in the proceedings below, is aggrieved in that it has a specific personal and legal interest that has possibly been adversely affected. United Cable TelevisionServices Corp. v. Dept. of Public Utility Control, 235 Conn. 334,342-43 (1995). Here the DPUC decision requiring the plaintiff and other cellular providers to be responsible for a share of the costs of the TRS may affect the plaintiff's financial interests adversely. Accordingly, the plaintiff has standing to bring this appeal.
A basic principle of administrative law is that the scope of the court's review is very limited.
 Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public Utilities Control, 219 Conn. 51, 57, 591 A.2d 1231
CT Page 8406 (1991); Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258, 260, 386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262, 579 A.2d 505 (1990); Baerst v. State Board of Education, 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994).
(Internal quotation marks omitted.) Cabasquini v. Commissioner ofSocial Services., 38 Conn. App. 522, 525-26, cert. denied,235 Conn. 906 (1995).
General Statutes § 4-183(j) in part provides:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
As to questions of law, the Supreme Court has recently stated that the deferential standard does not apply to a court's review of an "agency's construction of a statute, which is a pure question of law, particularly when the question has not been subjected to prior judicial review." Connecticut Light PowerCo. v. Texas-Ohio Power. Inc., 243 Conn. 635, 644 (1998). Otherwise, deference is accorded to the agency's construction of the statute it is empowered to enforce by applying subsection (6) of General Statutes § 4-183(j). Id., 642.
The plaintiff claims that the Omnibus Budget Reconciliation Act of 1993 (Budget Act) prohibits the DPUC's order in this case under its preemption provision, 47 U.S.C. § 332(c)(3), which reads in pertinent part,
 (A) Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry CT Page 8407 of or the rates charged by any commercial mobile service of any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services. Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates. . . .
The plaintiff does not dispute the DPUC's determination that the TRS program is universal service as defined in 47 U.S.C. § 254(c). (ROR, Decision, p. 9; Plaintiff's brief, p. 11.) The plaintiff reads § 332(c)(3)(A) to prohibit rate and entry state regulation over cellular providers and to prohibit any state imposed funding requirements on cellular providers for universal service unless cellular service is a substitute for and line service for a substantial portion of the communications in Connecticut. Thus, it argues, the DPUC's order requiring it and other cellular providers to fund the TRS program is preempted under this statute. The court disagrees.
In interpreting this federal statutory provision, the court does not defer to the DPUC's interpretation. Perry v. Dowling,95 F.3d 231, 236 (2d Cir. 1996) ("When the federal statute interpretation is that of a state agency and `no federal agency is involved,' deference is not appropriate."). The court reads § 332(c)(3) to prohibit the DPUC from regulating the entry of or rates charged by CMRS providers except that CMRS providers can be required to participate in funding universal services when their services are a substitute for land line service for a substantial portion of the communications in the state. In other words, the second sentence provides an exception to the prohibition against state regulation of rate or entry of CMRS providers. It does not limit state regulation of other terms and conditions of commercial mobile services. The FCC, which is the pertinent federal agency interpreting this statute, has done so in a similar manner to this court:
 5. Section 332(c)(3) also provides that "[n]othing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers CT Page 8408 of telecommunications services necessary to ensure the universal availability of telecommunications services at affordable rates."
 We believe this provision applies only to a state's authority to impose requirements that would otherwise constitute regulation of rates or entry. In that situation, a state would have to comply with section 332(c)(3) by showing that CMRS is "a substitute for land line telephone exchange service for a substantial portion of the communications within such State." The state is not required to demonstrate that CMRS is a substitute for land line service, however, when it requires a CMRS provider to contribute to the state's universal service mechanisms on an equitable and nondiscriminatory basis, in compliance with section 254(f).
Petition of Pittencrieff Communications, Inc., FCC 97-343, October 2, 1997, pp. 3-4. Thus, this court reads the federal statute to allow the DPUC to require CMRS providers to contribute to a universal service program without a showing that cellular services are a substantial substitute for land line telephone service within the state. This is so because the imposition of funding requirements for universal service does not constitute either rate or entry regulation, but is within the "other terms and conditions" the states may regulate under § 332(c)(3)(A).[2]
Further, as noted by the DPUC in its brief, as part of the Telecommunications Act of 1996, Congress enacted 47 U.S.C. § 254, which provides for the advancement of universal service. Included in that provision is the following:
(f) State authority
 A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, ad sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms.
(Emphasis added.) The state is required to preserve and advance CT Page 8409 universal service by ordering contribution from "every telecommunications carrier" on an "equitable and nondiscriminatory basis." Contrary to the plaintiff's first argument of federal preemption, there is clear federal authority supporting a DPUC funding requirement on cellular providers for the TRS program. The DPUC decision will not be overturned on this ground.
The plaintiff also argues that the assessment of costs violates federal law because it is not a competitively neutral assessment in four different ways. First, the plaintiff notes that on page 8 of the decision, the DPUC refers to "certain" commercial mobile radio service providers. From that reference, the plaintiff extrapolates an order that only certain CMRS providers will be charged with the costs. (Plaintiff's brief, pp. 23-24.) This extrapolation is not supported by the unambiguous wording of the DPUC's order that all telecommunication carriers providing service in Connecticut will be assessed. (ROR, Decision, pp. 9, 14.) Accordingly, this is not a basis to overturn the DPUC's decision.
The plaintiff also argues that since its customers do not use the TRS program, the assessment based on intrastate revenues is unjust and discriminatory. The court also rejects this argument in light of the DPUC finding in its January 26, 1994 order in docket number 89-03-03.
 The increased traffic on the network brought about as a result of the provision of TRS will benefit all users, including cellular carriers. While TRS users may not initiate calls on cellular phones there is reason to believe that they would make calls to persons using cellular phones thereby increasing the minute of use on the cellular network. Since all users benefit, all users should contribute on an equal basis to the program. If the Department excluded cellular carriers from the proposed funding mechanism, the cellular carriers would receive benefit from the program but would not participate in the funding. The Department does not consider this equitable and will therefore not exclude cellular carriers from the TRS funding mechanism.
(DPUC Order 89-03-03, January 26, 1994, p. 10; see appendices to parties' briefs.) The court will not disturb this finding.
The plaintiff claims that because of the technological and economic differences between cellular service and landline service the funding of TRS through an assessment based on CT Page 8410 intrastate gross revenues is unfair. There is no evidence in the record to support these claims, and the court will not overturn the DPUC on this basis. See General Statutes § 4-183(j)(5).Cabasquini v. Commissioner of Social Services, supra,38 Conn. App. 525-26.
There is a basis upon which the court will remand this matter to the DPUC. The plaintiff argues that the decision discriminates among cellular carriers because of its provision as to assessing new cellular service providers. The pertinent parts of the decision which set forth the procedure the DPUC intends to implement to assess the costs read as follows:
 As noted above, the number of certificated companies offering telecommunications services is approximately 200 and is increasing. As a requirement of certification, all telecommunications companies are required to share the costs of providing TRS in Connecticut. Therefore, on an annual basis, the Department will reopen this proceeding to include any newly certified intrastate telecommunications service providers into the TRS funding mechanism so that they too can share in funding the costs of providing TRS. During these reopened proceedings, the Department will also review Sprint's performance over the previous year, the estimated Relay costs for the next fiscal year and entertain requests to modify the existing contract to include the offering of new services (e.g., 900/976, Speech-to-Speech).
(ROR, Decision, p. 10.) And,
 10. The number of certificated companies offering telecommunications services is approximately 200 and is increasing.
 11. As a requirement of certification, all telecommunications companies are required to share in the costs of providing TRS in Connecticut.
(ROR, Decision, p. 14.) Cellular carriers are not subject to certification. See General. Statutes §§ 16-247c and 16-247g. The decision contains no provision for including cellular carriers new to Connecticut intrastate service in the funding mechanism for TRS. Without such a provision, the funding mechanism is deficient under federal law. The Telecommunication Act of 1996 provides in part that the contribution for universal service shall be "on an equitable and nondiscriminatory basis."47 U.S.C. § 254(f).
CT Page 8411
In the plaintiff's third claim, it raises a lack of state authority for the DPUC's decision. The DPUC responded in its brief that this issue was not raised below and therefore should not be considered by this court. See Finkenstein v.Administrator, 192 Conn. 104, 114 (1984). In light of the court's decision to remand this matter to the DPUC to determine an equitable and nondiscriminatory funding mechanism to include all cellular providers offering services in Connecticut, the DPUC shall also address the issue of state authority for the assessment of costs for TRS on cellular providers.
For the reason stated above, the appeal is sustained and the case is remanded to the DPUC for further proceedings regarding the two issues discussed above in accordance with this decision.
DiPentima, J.