JOSEPH I. LIEBERMAN, ATTORNEY GENERAL *v.* STATE BOARD OF LABOR RELATIONS

FREEDOM OF INFORMATION COMMISSION ET AL. *v.* STATE BOARD OF LABOR RELATIONS

NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199, NUHHCE, AFL-CIO *v.* STATE BOARD OF LABOR RELATIONS

TOWN OF EAST HAVEN *v.* EAST HAVEN POLICE UNION, LOCAL 1622, ET AL.

(13826)
(13827)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued May 9—decision released August 14, 1990

*E. Stephen Briggs,* general counsel, with whom were *Joseph M. Celentano,* assistant counsel, *Jamie L. Mills* and, on the brief, *Barbara J. Collins,* for the appellants (state board of labor relations, Connecticut Council of Police Unions No. 15, AFSCME, AFL-CIO, Connecticut Council of AFSA Locals, Connecticut State Federation of Teachers, Connecticut State Labor Council, AFL-CIO, Connecticut Council No. 4, AFSCME, AFL-CIO, and New England Health Care Employees Union, District 1199, NUHHCE, AFL-CIO).

*Ralph G. Elliot,* with whom were *J. Charles Mokriski, Mitchell W. Pearlman,* general counsel, *Susan P. Liemer* and, on the brief, *Rochelle S. Wood* and *Mark R. Kravitz,* for the appellees (freedom of information

commission, Hartford Courant Company, Jackson Newspapers, Connecticut Council on Freedom of Information and Connecticut Daily Newspapers Association).

*Robert B. Teitelman,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellee (Joseph I. Lieberman, attorney general).

HULL, J. We have burrowed diligently through a welter of claims, administrative rulings, and court judgments spanning a period of seven years and involving at one time or another at least fourteen parties, and have uncovered at the center a single issue that is dispositive of these consolidated appeals: Is the destruction of public documents a legal subject of collective bargaining? The state board of labor relations (labor board) issued a ruling declaring that the destruction of public employee discipline records pursuant to collective bargaining agreements, arbitration awards and grievance settlements is a mandatory subject of bargaining and that, provided certain conditions are met, such agreements are legal and enforceable. From this ruling and a related decision of the labor board, the attorney general, the freedom of information commission (FOIC) et al.,[1] New England Health Care Employees Union, District 1199, NUHHCE, AFL-CIO (New England Health Care), and the town of East Haven appealed separately to the Superior Court where the cases were subsequently consolidated for trial. The trial court overturned the labor board's declaratory ruling and accordingly sustained the appeals of the attorney

[1] The following parties joined the appeal of the FOIC: The Hartford Courant Company, The Jackson Newspapers, The Connecticut Council on Freedom of Information, and The Connecticut Daily Newspapers Association.

general and the FOIC et al., dismissed the appeal of New England Health Care and sustained the appeal of East Haven, remanding it to the labor board for further proceedings. The labor board et al.,[2] appealed to the Appellate Court from the judgments in the first, second and fourth cases, and New England Health Care and Connecticut Council No. 4, AFSCME, AFL-CIO appealed to the Appellate Court from the judgments in all four cases. This court thereafter transferred these appeals here in accordance with Practice Book § 4023. We now affirm the judgment of the trial court in the first three cases and dismiss the appeals in the fourth case.

The trial court's memorandum of decision reveals the following facts. On June 29, 1983, the town of East Haven suspended Joseph Ridarelli, a member of the municipal police department, for alleged violations of the rules and regulations of that department. Prior to the departmental hearing on the matter, East Haven and Local 1662, Council 15, AFSCME, AFL-CIO (union), the union representing Ridarelli, reached a settlement pursuant to which Ridarelli agreed to resign his employment position in exchange for East Haven's agreement to destroy all records, documents and statements pertaining to the alleged violations.

On August 17, 1983, the Jackson Newspapers requested that East Haven allow it to inspect and/or copy records regarding Ridarelli's suspension and resignation. Although the town and its counsel had retained copies of Ridarelli's discipline record, the town refused to honor the disclosure request.[3] Jackson Newspapers

[2] In its appeal, the labor board is joined by the following parties: Connecticut Council of Police Unions No. 15, AFSCME, AFL-CIO, Connecticut Council of AFSA Locals, Connecticut State Federation of Teachers and Connecticut State Labor Council, AFL-CIO.

[3] The town of East Haven did agree to release Ridarelli's letter of resignation and the minutes of the meeting at which the town council had

responded by filing a complaint with the FOIC. The FOIC held a hearing on the matter and thereafter issued its ruling, requiring that East Haven provide the Jackson Newspapers access to and copies of all the requested documents.

The union then filed a complaint with the labor board, alleging that East Haven had violated the settlement agreement reached by the parties by failing to destroy the relevant documents in Ridarelli's personnel file. The labor board conducted a hearing on the union's complaint after which it ruled that East Haven had repudiated a legal settlement agreement and that Ridarelli was, therefore, entitled to economic redress for losses suffered as a result of that repudiation. From this decision, East Haven appealed to the Superior Court.

Recognizing conflicts between the decision of the FOIC and the labor board, the attorney general, pursuant to General Statutes § 4-176,[4] petitioned the labor board for a declaratory ruling on the following question: "Whether and in what circumstances under the State Employee Relations Act [General Statutes §§ 5-270 through 5-280], the Municipal Employee Relations Act [General Statutes §§ 7-460 through 7-479], or the School Board-Teacher Negotiations Act [General Statutes §§ 10-153 through 10-156d], construed in light of [General Statutes] §§ 1-21k [penalty provision for the illegal destruction of public records], 4-190 [through] 4-197 [Personal Data Act], 7-109 [provision for the destruction of documents in custody of munici-

accepted that resignation, but refused to release the civilian complaint letters that prompted Ridarelli's decision to resign.

[4] General Statutes (Rev. to 1985) § 4-176 provides in pertinent part: "Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings."

pality] and 11-8 [through] 11-8c [public records manage-
ment statutes], provisions of collective bargaining
agreements, arbitration awards or grievance settle-
ments made pursuant to any of said acts, which call
for records of a public employer to be destroyed, are
null and void?''

On February 2, 1987, the labor board issued its
declaratory ruling on the attorney general's petition,
in which it held that the "[d]estruction of employee dis-
cipline records pursuant to collective bargaining agree-
ments, arbitration awards or grievance settlements is
a mandatory subject of bargaining and such agreements
are legal and enforceable." The board noted that,
because an agreement to destroy an employee's rec-
ord reflects the judgment that the record in question
is inaccurate or no longer relevant and necessary for
employee discipline purposes, there exist contempora-
neous duties under the agreement and the Personal
Data Act; General Statutes §§ 4-190 through 4-197; to
destroy the record.[5] Such destruction, in the board's
view, does not conflict with interests protected by the
Freedom of Information Act (FOIA), General Statutes
§§ 1-15, 1-18a, 1-19 through 1-19b, 1-21, 1-21a and 1-21c
through 1-21k. The board's decision recognized that the
General Statutes require approval from certain officials
employed by the state library as a prerequisite to the
destruction of public documents. General Statutes
§ 11-8a (c).[6] These statutory provisions, however, were
viewed by the board as having little impact on the set-

---

[5] In reaching this conclusion, the labor board relied on the language of
General Statutes § 4-193 (e) that requires a municipal department to "[m]ain-
tain only that information about a person which is relevant and necessary
to accomplish the lawful purposes of the agency."

[6] General Statutes § 11-8a (c) provides in pertinent part: "If the state
librarian determines that [public] books, records, papers and documents
are of no administrative, fiscal, or legal value, and the public records admin-

tlement agreements in question. According to the board, the bargaining procedure itself would determine in great part the necessity for the retention of the record in question, thereby limiting the library officials' discretion in evaluating a public employer's request to destroy an employee's record.

Upon the filing by the attorney general of the petition for a declaratory ruling, East Haven's pending appeal in the Superior Court was remanded to the labor board for further consideration. On October 20, 1988, the labor board issued its decision upon reconsideration pursuant to the remand in the East Haven case. In light of the conclusions of law outlined in its declaratory ruling, the board reaffirmed its original order and concluded that an agreement to destroy records, entered into as part of an employee disciplinary process, obligates an employer to make a good faith effort to seek the approval of the public records administrator to destroy the records in question.

In response to the labor board's declaratory ruling and related decision, the attorney general, the FOIC et al., New England Health Care and East Haven instituted separate appeals in the Superior Court that were subsequently consolidated for trial. Collectively, the parties raised issues challenging the labor board's application of the state's public records management statutes and the freedom of information statutes.[7] The trial

istrator and state archivist determine that they are of no historical value to the state, the state librarian shall approve their disposal, whereupon the head of the state agency or political subdivision shall dispose of them as directed by the state librarian."

[7] The attorney general challenged the labor board's limitation of the scope of discretion accorded the state library officials under General Statutes § 11-8a (c). New England Health Care claimed that the public records management statutes; General Statutes § 11-8 et seq.; were not applicable to the removal or destruction of the information contained within a public

court, in its memorandum of decision dated September 30, 1989, overruled the board's declaratory ruling and stated that Ridarelli's file must be made available to the public. The basis of the court's decision was its conclusion that an agreement to destroy a public employee's discipline record conflicts with applicable state statutes. Accordingly, the court sustained the appeals of the attorney general and the FOIC et al., dismissed the appeal of New England Health Care and sustained the appeal of East Haven, remanding that matter to the labor board for further proceedings consistent with the court's decision.

On appeal from these judgments, the labor board et al. and New England Health Care et al. challenge: (1) the trial court's conclusion that an agreement to destroy a public employee's disciplinary record is illegal and unenforceable, claiming that the court improperly analyzed the interrelationship among the state's collective bargaining statutes, Freedom of Information Act, public records management statutes and Personal Data Act; and (2) the trial court's application of the legal conclusions reached in its decision to the facts of the East Haven case. We are unpersuaded by the first challenge to the trial court's decisions and do not reach the merits of the second challenge, because we dismiss the appeals from the trial court's judgment in the East Haven case for lack of jurisdiction.

I

The foundation of the labor board's declaratory ruling and related decision was its conclusion that the

employee's personnel file once that information became the subject of a collective bargaining settlement. The FOIC et al. challenged the labor board's conclusion that the destruction of a public employee's discipline record does not implicate interests protected by the FOIA. The town of East Haven challenged the labor board's conclusions of law as applied to its settlement agreement with Ridarelli.

destruction of a public employee's discipline record is a "[condition] of employment" and is, therefore, a mandatory subject of collective bargaining.[8] The board then determined that when the bargaining process results in an agreement requiring a public employer to destroy an employee's discipline record, the various provisions of the General Statutes support the enforceability of that agreement. We conclude that an agreement to destroy public records conflicts with relevant provisions of the General Statutes, and we hold, therefore, that the destruction of a public employee's discipline record is an illegal subject of collective bargaining.[9]

## A

Before addressing the substantive law that leads us to our conclusion, we set forth the well established standard of judicial review of administrative agency rulings. General Statutes § 4-183 (j), as amended to take effect July 1, 1989, permits modification or reversal of an agency's decision if "substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions

[8] State employers, municipal employers and boards of education are required by statute to negotiate in good faith with their respective employees regarding salaries, hours, and other conditions of employment. See General Statutes §§ 5-272 (c), 7-470 (c) and 10-153d (b).

[9] We note that our holding is broader than that of the trial court. While that court held that an agreement requiring the destruction of public records conflicts with relevant provisions of the General Statutes, it did not foreclose the possibility that a legal and enforceable agreement concerning the destruction of such records could be reached by the contracting parties. In the trial court's view, a public employer and employee could legally agree to the destruction of disciplinary documents provided that the agreement reflected the restrictions and requirements that the General Statutes impose on the retention and destruction of public records. We disagree with this aspect of the court's decision. On the basis of our analysis of the statutes regarding the disclosure, retention and destruction of public records, we conclude that the destruction of a public employee's discipline record is an illegal subject of collective bargaining.

are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." As under the prior statute, "[t]he [reviewing] court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. General Statutes § 4-183 [j]; *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d 103 (1980); *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts. *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986); *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.,* 168 Conn. 294, 298–99, 362 A.2d 529 (1975); *Westport* v. *Norwalk,* 167 Conn. 151, 355 A.2d 25 (1974)." *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717, 546 A.2d 830 (1988).

"On the other hand, it is the function of the courts to expound and apply governing principles of law. *N.L.R.B.* v. *Brown,* 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.,* 487 F.2d 1143, 1170–71 (D.C. Cir. 1973), aff'd sub nom. *Florida Power & Light Co.* v. *International Brotherhood of Electrical Workers,* 417 U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra; *Real Estate*

*Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979)." *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 717–18.

These appeals present a question concerning the legality of bargaining agreements that require the destruction of certain information contained within a public employee's personnel file. As the decisions of the labor board and the trial court demonstrate, the answer to this question turns upon the interpretation of the interrelationship of the various state statutes. This is purely a question of law, and, therefore, invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. See id., 718; *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 5–6, 434 A.2d 293 (1980).

While we ordinarily give great deference to the construction given a statute by the agency charged with its enforcement; *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 496–97; we conclude that under the facts of the instant case, the labor board's decision does not warrant special deference. The statutes construed by the labor board in reaching its decision were not limited to those within the board's enforcement authority, but included statutes that the legislature has made the responsibility of other state entities. Moreover, the board's interpretation of the statutory scheme at issue is a question of law that has not previously been subjected to judicial scrutiny. See *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 177 n.2, 550 A.2d 8 (1988); *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 718–19; *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *Schlumberger Technology Cor-*

*poration* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987). In these circumstances, we do not consider ourselves bound to give preferential treatment to the labor board's construction of either the relevant statutes themselves or the relationship among the statutes. It is with this understanding that we undertake our inquiry.

B

In *N.L.R.B.* v. *Wooster Division, Borg Warner Corporation,* 356 U.S. 342, 349–50, 78 S. Ct. 718, 2 L. Ed. 2d 823 (1958), the United States Supreme Court classified the subjects of bargaining under the National Labor Relations Act as mandatory, permissive or illegal, a classification this court has applied in the context of public sector labor negotiations. See *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 576–77, 295 A.2d 526 (1972). "The duty to negotiate is limited to mandatory subjects of bargaining. As to other matters, however, each party is free to bargain or not to bargain. [*N.L.R.B.* v. *Wooster Division, Borg Warner Corporation,* supra, 349]; *N.L.R.B.* v. *American National Ins. Co.,* 343 U.S. 395, 72 S. Ct. 824, 96 L. Ed. 1027 [1952]." Id., 577. The duty and/or ability to bargain, however, is necessarily limited to those subjects to which the parties can legally agree. See, e.g., *Local 1219* v. *Connecticut Labor Relations Board,* 171 Conn. 342, 352, 370 A.2d 952 (1976) ("[t]he prohibitions of the [Municipal Employer Relations Act] may not be varied by the contracts of private parties"); *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 587 (court stated that if the submission of certain subjects to binding arbitration is unlawful, the topic is beyond the scope of negotiability). As with contracts generally, the bargaining process and resulting agreements are subject to the restrictions and limitations of public policy as manifested in constitutions, statutes

and applicable legal precedents. See generally *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S. Ct. 847, 92 L. Ed. 1187 (1948); *Muschany* v. *United States,* 324 U.S. 49, 64–68, 65 S. Ct. 442, 89 L. Ed. 744 (1945); *Stratford v. Local 134, IFPTE,* 201 Conn. 577, 590–91, 519 A.2d 1 (1986); *State College AAUP* v. *State Board of Labor Relations,* 197 Conn. 91, 98, 495 A.2d 1069 (1985).

The initial question that must be answered in determining the scope of public sector labor negotiations, therefore, is whether the parties involved in the bargaining process can *legally* agree to the subject in question. See A. Knapp, Labor Relations Law in the Public Sector (1977) pp. 82–83. Our answer to this question in the instant case ends our inquiry, because we conclude that, in light of applicable statutory and constitutional provisions, a public employer does not have the legal authority to agree to the destruction of information contained within a public employee's personnel file.

## C

The state constitution provides that our government is to be responsible to the people. Conn. Const., art. I, § 2. The legislature, in recognition of this guarantee, has ensured the government's accountability through the FOIA and the establishment of a public records management system.

The FOIA imposes an affirmative duty on each state and municipal agency to "keep and maintain all public records in its custody at its regular office or place of business in an accessible place . . . . " General Statutes § 1-19 (a). This act ensures that "[a]ny person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record." General Statutes § 1-15. It also gives citizens the right "to inspect such records promptly during regular office or business hours or to receive a copy of such records"

except when a federal law or state statute provides otherwise. General Statutes § 1-19 (a). Included in the scope of the FOIA is "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method." General Statutes § 1-18a (d). A public employee's personnel record is clearly encompassed by this definition.

As we have stated in the past, the FOIA " 'expresses a strong legislative policy in favor of the open conduct of government and free public access to its records.' *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328, 435 A.2d 353 [1980]." *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980); see also *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 431, 518 A.2d 49 (1986); *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 188, 470 A.2d 1209 (1984). The act does not, however, confer upon the public an absolute right to all government information. *Wilson* v. *Freedom of Information Commission,* supra. In those limited circumstances where the legislature has determined that some other public interest overrides the public's right to know, it has provided explicit statutory exceptions. See, e.g., General Statutes § 1-19 (b). We have held that these exceptions must be narrowly construed. *Board of Police Commissioners* v. *Freedom of Information Commission,* supra; *Wilson* v. *Freedom of Information Commission,* supra. In accordance with this principle, we conclude that the legislature has not provided a blanket exemption from disclosure for all public employee discipline records that the employer has agreed to destroy.[10] That

---

[10] General Statutes § 1-19 (b) exempts from disclosure under the FOIA, inter alia, "personnel or medical files and similar files the disclosure of which

is not to say that disclosure of these records would be required under all circumstances, but only that, absent a statutory exemption applicable to the facts of a particular case, the general policy under the FOIA would favor disclosure of the records.[11]

We note that the FOIA's general policy favoring public access has strong federal constitutional underpinnings. As the United States Supreme Court has made clear, the first amendment to the federal constitution is not limited to protection of free expression but also embodies the right to receive and gain access to information and ideas. See *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 508–10, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984); *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 606–607, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); *Nixon* v. *Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978). "[A]n arbitrary interference with access to important information is an abridgement of the freedoms of speech and of the press protected by the First Amendment." *Richmond Newspapers, Inc.* v. *Virginia,*

would constitute an invasion of personal privacy" and "records, reports and statements of strategy or negotiations with respect to collective bargaining." The labor board determined that these provisions exempt from disclosure any discipline record that the public employer and public employee have agreed to destroy. We conclude that the board's construction of these statutory exemptions is too broad. First, there is certainly information contained within a public employee's discipline record the disclosure of which would not implicate a legally protected privacy interest. Second, while the information contained within an employee's personnel file may be the subject of bargaining, the subject standing alone reveals nothing about the strategy or negotiation involved in the collective bargaining process.

[11] The legislature has vested in the FOIC, and ultimately in the judicial system by way of administrative appeals from the decisions of the FOIC, the authority to determine whether a particular record is subject to disclosure. General Statutes §§ 1-21j, 4-166 et seq. We note that the decision of the FOIC requiring that Ridarelli's file be made available to the public has not been appealed, and is, therefore, an aspect of this case not reviewable by this court.

448 U.S. 555, 583, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (Stevens, J., concurring.)

The legislature has addressed the concern that the right of public access codified in the FOIA be protected from arbitrary interference by establishing a systematic and controlled approach to the retention and destruction of public records. See General Statutes §§ 11-8 through 11-8c. The state librarian is "responsible for developing and directing a records management program for the books, records, papers and documents of all state agencies within the executive department . . . and . . . of the several towns, cities, boroughs, districts and other political subdivisions of the state . . . ." General Statutes § 11-8 (a). Pursuant to § 11-8 (b), the state librarian must appoint an assistant to serve as the public records administrator.

No public record may be "removed, destroyed, mutilated, transferred or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules and regulations adopted by the state library board . . . ." General Statutes § 11-8b. The state librarian is authorized to require each "state agency, or each political subdivision of the state . . . to inventory all books, records, papers and documents under its jurisdiction and to submit to him for approval retention schedules for all such books, records, papers and documents . . . ." General Statutes § 11-8a (b). The legislature has given the authority for approving the disposal of public books, records, papers and documents to the public records administrator, the state archivist and the state librarian. General Statutes § 11-8a (c).[12] If these officials determine that the

---

[12] We note that these approval requirements as applied to municipalities are also codified in General Statutes § 7-109, which provides in pertinent part: "Any official, board or commissioner of a municipality may, *with the approval* of the chief administrative officer of such municipality and *of the public records administrator,* destroy any document in his or its custody

"books, records, papers and documents are of no administrative, fiscal, or legal value . . . [or] historical value to the state," their disposal will be approved. General Statutes § 11-8a (c).

In its opinion issuing the declaratory ruling, the labor board explained that the bargaining process between a public employer and public employee would determine in great part the necessity for the retention of the record in question, thereby limiting the library officials' discretion in evaluating the employer's request to destroy the employee's record. The basic premise of this position is the view that once the records are unnecessary to the purposes of the employer and employee, the records lack any value or usefulness and can be destroyed pursuant to § 11-8a (c). We strongly disagree. The value or usefulness of a public employee's discipline record does not live and die with the employee dispute that gave rise to that record. To illustrate this point we need refer to only a few examples where such records retain considerable value beyond the particular dispute responsible for their creation: (1) in legal proceedings brought by members of the public, such as those instituted pursuant to 42 U.S.C. § 1983; (2) in an indemnity action brought by the public employee for losses resulting from such lawsuits; (3) in investigations of the employee or agency for alleged violations of criminal or civil statutes; and (4) in background checks of the employee relating to possible appointment to public office.

Where the legislature has deemed it appropriate, specific exceptions to the records retention rules have been created. For example, the legislature has enacted laws

relating to any matter which has been disposed of and of which no record is required by law to be kept, after such document has been held for the period of time specified in a retention schedule adopted by the public records administrator." (Emphasis added.)

governing the destruction of particular election records. General Statutes §§ 9-148, 9-150, 9-302, 9-303 and 9-310.[13] The labor board expressed in its decision the view that the Personal Data Act likewise exempts from the public records retention requirements the information contained within a public employee's personnel file once the employer and employee agree to the destruction of that information. We are unpersuaded by the construction given the Personal Data Act by the labor board. This act requires an agency to "[m]aintain only that information about a person which is relevant and necessary to accomplish the lawful purposes of the agency." General Statutes § 4-193 (e). As we discussed previously, maintaining disciplinary records and complaints about public employees for the required retention periods may be relevant and necessary to many lawful purposes of the agency beyond the particular disciplinary procedure involved. Moreover, although the act limits the information that the agency is required to "maintain,"[14] this act does not authorize the agency, upon its determination that a record is no longer relevant and necessary for its purpose, to destroy that record without regard to the specific approval requirements of § 11-8a (c). We conclude, therefore, that the legislature has not exempted from the public records retention requirements a public employee's discipline record, the destruction of which is the subject of a bargaining agreement.

The statutory scheme established by the legislature regarding access to and management of public records clearly indicates that the proper forum for determin-

---

[13] These statutes provide a specific procedure for the destruction of certain election records and operate as an exception to the general rule that destruction of public records requires the approval of the public records administrator.

[14] The Personal Data Act defines "maintain" to mean "collect, maintain, use or disseminate." General Statutes § 4-190 (6).

ing the value and usefulness of a public employee's personnel record, and for requiring the retention or approving the destruction of information contained within that record, is not the closed session at the bargaining table. While a public employee is free to bargain over the employment-related use of information contained within his personnel file, the destruction of the information itself implicates fundamental rights of access by the public and must be subject to the confines of the established public records management system. Only certain independent library officials have been vested by the legislature with the authority to approve the destruction of public records. The destruction of public records, therefore, is an illegal subject of bargaining, and any collective bargaining agreement, arbitration award or grievance settlement requiring such destruction is null and void.

## II

We now address briefly the challenge levied against the trial court's decision in the fourth case, East Haven's appeal from the decision of the labor board. The court sustained East Haven's appeal and remanded the matter to the labor board for further proceedings consistent with its opinion. The labor board et al. and New England Health Care et al. claim that the trial court improperly applied to the facts of the East Haven case the legal conclusions reached in its memorandum of decision. We do not reach the merits of this claim, because we conclude that the trial court's disposition of the East Haven case does not constitute a final judgment. The appeals from the trial court's judgment in that case, therefore, are dismissed.

"Under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., further appellate review of superior court rulings on administrative appeals is limited to cases in which the Superior Court

has rendered a final judgment. General Statutes § 4-184. That statutory provision accords with the general proposition that, except in special cases, such as appeals upon reservations; *State* v. *Sanabria,* 192 Conn. 671, 681–85, 474 A.2d 760 (1984); or upon certification pursuant to General Statutes § 52-265a; *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984); the jurisdiction of this court is restricted to appeals from judgments that are final. General Statutes § 52-263; Practice Book § 4000 (formerly § 3000); *Melia* v. *Hartford Fire Ins. Co.,* 202 Conn. 252, 255, 520 A.2d 605 (1987); *Doublewal Corporation* v. *Toffolon,* 195 Conn. 384, 388–89, 488 A.2d 444 (1985)." *Schieffelin & Co.* v. *Department of Liquor Control,* 202 Conn. 405, 408–409, 521 A.2d 566 (1987).

This court has stated that an order remanding a case to an agency for further proceedings will be deemed a final judgment where such proceedings will be "ministerial, not requiring the exercise of independent judgment or discretion and not involving additional evidence." *Matey* v. *Estate of Dember,* 210 Conn. 626, 630, 556 A.2d 599 (1989); see *Santos* v. *Publix Theatres Corporation,* 108 Conn. 159, 142 A. 745 (1928). On the other hand, we have determined that appellate review of a judicial order of administrative remand is premature in those situations where the case is remanded because the administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. See *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 410–12; *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 156–57, 520 A.2d 186 (1987).

The trial court remanded the East Haven case for further proceedings consistent with its opinion. Because the court had ruled that the settlement agreement there involved was illegal and unenforceable, the labor board

on remand will be required to exercise its independent judgment in answering a question it has not previously addressed, namely: What equitable remedies, if any, are available to Ridarelli, who resigned his employment position in reliance on a settlement provision to which his public employer had no legal authority to agree? The labor board proceedings on remand clearly will not be ministerial in nature. The remand order directing further proceedings, therefore, is not a final judgment. Accordingly, we dismiss the appeals in the East Haven case.

The judgments of the trial court are affirmed in the first three cases; the appeals in the fourth case are dismissed.

In this opinion the other justices concurred.