## COMMISSIONER OF PUBLIC SAFETY *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (AC 32381)

Gruendel, Beach and Sullivan, Js.

Argued May 16—officially released August 13, 2013

*Steven R. Strom*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Richard Blumenthal*, former attorney general, *Nora Dannehy*, deputy attorney general, and *Steven R. Sarnoski*, assistant attorney general, for the appellant (plaintiff).

*Victor R. Perpetua*, principal attorney, for the appellee (named defendant).

*Opinion*

BEACH, J. The plaintiff, the Commissioner of Public Safety (commissioner), appeals from the judgments of the trial court dismissing his appeals and concluding that the defendant, the Freedom of Information Commission (commission),[1] properly determined that the Connecticut Freedom of Information Act (act), General Statutes § 1-200 et seq., required the disclosure of printouts or "rap sheets" obtained by the Department of Public Safety (department) from the National Crime Information Center (NCIC) computerized database,

---

[1] David Collins, the New London Day, Alexander Wood and the Manchester Journal Inquirer, were also named as defendants in this action. This appeal involves only the commission.

which is maintained by the Federal Bureau of Investigation (FBI). The commissioner claims that the NCIC printouts were not subject to public disclosure under the act. We reverse, in part,[2] the judgments of the trial court.

The following facts, as found by the commission,[3] and procedural history are relevant to this appeal. David Collins, a reporter for the New London Day, and Alexander Wood, a reporter for the Manchester Journal Inquirer, independently sought copies of various department records concerning a suicide that occurred at the MGM Grand Hotel at Foxwoods Resort Casino in Ledyard on June 4, 2008. The only requests made by Collins and Wood that are involved in this appeal are their requests for the disclosure of copies of the results of the department's electronic inquiry about the deceased made to the NCIC, a computerized database of criminal history information that is accessible to the department[4] through the National Crime Prevention and Privacy Compact (compact). The department denied the requests of Collins and Wood for the NCIC printouts. Collins and Wood appealed to the commission, alleging that the department had violated the act by failing to provide them with copies of documents including the NCIC printouts. In both Collins' and Wood's appeals, the commission concluded that the department could not lawfully avoid its obligation to disclose the NCIC

[2] The parties reached agreements as to all of the other items in the reporters' requests.

[3] The commission ruled separately in David Collins' and Alexander Wood's cases but made similar findings.

[4] "The NCIC database is maintained by the FBI and aggregates criminal justice information from a variety of sources. Some files in the database contain information about individual persons and are known as person files. Other files contain records regarding stolen property. Law enforcement agencies routinely check NCIC records to obtain information concerning persons in custody or under investigation." *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 58 n.4, 52 A.3d 636 (2012).

printouts by "contract[ing] away" the obligation, and that the state's entering into the compact constituted such a contract. Therefore, neither General Statutes § 29-164f nor 42 U.S.C. § 14616 effectively prohibited the disclosure of the NCIC printouts.

Pursuant to General Statutes §§ 1-206 and 4-183, the commissioner appealed from the commission's rulings in both the Wood and Collins cases. The commissioner moved to consolidate the appeals, which motion was granted. The trial court agreed with the commission's conclusion that the department may not "contract away" its statutory obligations under the act. The court concluded that the department had not demonstrated that the commission acted illegally or abused its discretion in ordering it to disclose the NCIC printouts. This appeal followed.

On appeal, the commissioner argues that the court erred in finding that the commission appropriately required the department to disclose the NCIC printouts, because the NCIC printouts were not subject to public disclosure under the act. The commissioner contends that the disclosure of information from the NCIC database is governed by 28 U.S.C. § 534 and 42 U.S.C. § 14616, which preempt state laws to the contrary. The commissioner argues, alternatively, that the disclosure of the NCIC printouts are subject to exemption under the act, General Statutes § 1-210 (a).[5]

We first address the commissioner's claim that 28 U.S.C. § 534 and 42 U.S.C. § 14616 preempt conflicting state law, and conclude that federal law does not preempt state law in this case but, rather, is consistent with state law. "Judicial review of [an administrative

---

[5] The commissioner also argues that the NCIC printouts are exempt from disclosure under the act pursuant to § 1-210 (b) (10). Because we reverse the decision of the trial court on other grounds, we need not address this claim.

agency's] action is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq. (UAPA)] . . . and the scope of that review is very restricted." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 136, 778 A.2d 7 (2001). Generally, the court's duty is to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. See id., 137. "Cases that present pure questions of law [however] . . . invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [W]e do not afford deference to an agency's interpretation of a statute when . . . the construction of a statute previously has not been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation . . . . Accordingly . . . we exercise plenary review in accordance with our well established rules of statutory construction." (Citation omitted; internal quotation marks omitted.) *Sams* v. *Dept. of Environmental Protection*, 308 Conn. 359, 391, 63 A.3d 953 (2013).

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution.[6] . . . [S]tate law is pre-empted to the extent that it actually conflicts with federal law."[7] (Citations omitted; internal quotation marks omitted.) *Rodriguez* v. *Testa*, 296 Conn. 1, 8–9, 993 A.2d 955 (2010).

---

[6] The supremacy clause of the United States constitution provides in relevant part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

[7] State law is otherwise preempted under the supremacy clause in circumstances not relevant to this appeal. See *Rodriguez* v. *Testa*, 296 Conn. 1, 8, 933 A.2d 955 (2010).

"[W]hen a federal law and a state law conflict and compliance with both laws is impossible, the federal law will preempt the state law." *Pictometry International Corp.* v. *Freedom of Information Commission*, 307 Conn. 648, 672, 59 A.3d 172 (2013), citing *Crosby* v. *National Foreign Trade Council*, 530 U.S. 363, 372–73, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000).

By way of § 29-164f,[8] our legislature entered into the compact, which established the NCIC. Section 29-164f, as well as 42 U.S.C. § 14616, set forth the terms of the compact. Although the compact does not contain an express prohibition on disclosure, the compact provides that the NCIC database is to be used for limited purposes authorized by law, such as background checks, and that NCIC records may only be used for official purposes.

Section 29-164f (a) of the overview of the compact provides in relevant part: "[t]his Compact organizes an electronic information sharing system among the federal government and the states to exchange criminal history records for non-criminal justice purposes authorized by federal or state law, such as background checks for government licensing and employment." Section 29-164f, art. II (5) of the compact provides that one of the purposes of the compact is to "[r]equire the FBI and each party state to adhere to . . . standards concerning record dissemination and use . . . ." Section 29-164f, art. IV (c), concerning authorized record disclosures, provides in relevant part: "Any record obtained under the Compact may be used only for the official purposes for which the record was requested. Each Compact officer shall establish procedures . . . which procedures shall protect the . . . privacy of the

---

[8] General Statutes § 29-164f provides in relevant part: "The National Crime Prevention and Privacy Compact is hereby entered into and enacted into law with any and all of the states and the federal government legally joining therein . . . ."

records, and shall: (1) Ensure that records obtained under this Compact are used only by authorized officials for authorized purposes . . . ."

Furthermore, 28 U.S.C. § 534 makes clear that, under the compact, NCIC information is not to be disseminated outside the receiving department or related agencies: "(a) the Attorney General shall . . . (4) exchange such records and information with, and for the official use of, authorized officials of the Federal Government . . . the States, cities, and penal and other institutions. (b) The exchange of records and information authorized by subsection (a) (4) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies. . . ." A narrow exception in domestic violence and stalking cases is carved out in 28 U.S.C.§ 534 (f) (1): "Information from national crime information databases consisting of identification records, criminal history records, protection orders, and wanted person records may be disseminated to civil and criminal courts for use in domestic violence or stalking cases. Nothing in this subsection shall be construed to permit access to such records for any other purpose." Subsection (f) (1) clearly demonstrates that access to NCIC records for any purpose not contained within the compact is not permitted.

In *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 68–74, 52 A.3d 636 (2012), our Supreme Court determined that a copy of an NCIC printout was exempt from disclosure under § 1-210 (a) because disclosure was barred by 8 C.F.R. § 236.6 (2007). Although the court did not decide the issue of whether the disclosure of NCIC documents was barred by 28 U.S.C. § 534, *Commissioner of Correction* v. *Freedom of Information Commission*, supra, 53, nonetheless is instructive. Copies of NCIC documents

have been held to be exempt from disclosure under § 1-210 (a) because our legislature authorized participation in the compact.

Section 534 of title 28 of the United States Code was discussed, moreover, by the United States Supreme Court in *United States Dept. of Justice* v. *Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989). That case involved requests made by news media for the disclosure of the FBI "rap sheets" of four members of a family whose business reportedly was dominated by organized crime figures. Id., 757. In holding that the disclosure of the contents of the particular requested FBI "rap sheets" was prohibited by the federal Freedom of Information Act, the Supreme Court provided the following analysis regarding the dissemination of FBI "rap sheets":

"The local, state, and federal law enforcement agencies throughout the Nation that exchange rap-sheet data with the FBI do so on a voluntary basis. The principal use of the information is to assist in the detection and prosecution of offenders; it is also used by courts and corrections officials in connection with sentencing and parole decisions. As a matter of executive policy, the Department [of Justice] has generally treated rap sheets as confidential and, with certain exceptions, has restricted their use to governmental purposes. Consistent with the Department's basic policy of treating these records as confidential, Congress in 1957 amended the basic statute to provide that the FBI's exchange of rap-sheet information with any other agency is subject to cancellation 'if dissemination is made outside the receiving departments or related agencies.' . . . [S]ee 28 U.S.C. § 534 (b)." (Citation omitted.) *United States Dept. of Justice* v. *Reporters Committee for Freedom of the Press*, supra, 489 U.S. 752.

"[O]n three separate occasions Congress has expressly authorized the release of rap sheets for other

limited purposes. In 1972 it provided for such release to officials of federally chartered or insured banking institutions and 'if authorized by State statute and approved by the Attorney General, to officials of State and local governments for purposes of employment and licensing . . . .' In 1975, in an amendment to the Securities Exchange Act of 1934, Congress permitted the Attorney General to release rap sheets to self-regulatory organizations in the securities industry. See 15 U.S.C. § 78q (f) (2) (1982 ed., Supp V). And finally, in 1986 Congress authorized release of criminal-history information to licensees or applicants before the Nuclear Regulatory Commission. See 42 U.S.C. § 2169 (a). These three targeted enactments—all adopted after the [federal Freedom of Information Act] was passed in 1966—are consistent with the view that Congress understood and did not disapprove the FBI's general policy of treating rap sheets as nonpublic documents.

"Although much rap-sheet information is a matter of public record, the availability and dissemination of the actual rap sheet to the public is limited. Arrests, indictments, convictions, and sentences are public events that are usually documented in court records. In addition, if a person's entire criminal history transpired in a single jurisdiction, all of the contents of his or her rap sheet may be available upon request in that jurisdiction." (Citation omitted.) *United States Dept. of Justice* v. *Reporters Committee for Freedom of the Press*, supra, 489 U.S. 753.

The Supreme Court relied in part, on 28 U.S.C. § 534 (b) to demonstrate that the disclosure of FBI "rap sheets" was limited. It noted "federal statutory and regulatory provisions . . . [limit] the disclosure of rap-sheet information." Id., 764–65. "[T]he FBI's exchange of rap-sheet information 'is subject to cancellation if dissemination is made outside the receiving departments or related agencies.' 28 U.S.C. § 534 (b)." *United*

*States Dept. of Justice* v. *Reporters Committee for Freedom of the Press,* supra, 489 U.S. 765. The Supreme Court noted that "these statutes and regulations, taken as a whole, evidence a congressional intent to protect the privacy of rap-sheet subjects . . . ." Id., 765. Although the privacy exemptions under the federal Freedom of Information Act are not at issue in this case, *United States Dept. of Justice* v. *Reporters Committee for Freedom of the Press,* supra, 749, demonstrates the limits that 28 U.S.C. § 534 (b) places on disclosure of FBI "rap sheets."

Courts in other jurisdictions have concluded that "rap sheets" and NCIC printouts were exempt from disclosure under state or federal freedom of information acts. See *Vazquez* v. *United States Dept. of Justice,* 887 F. Supp. 2d 114 (D.D.C. 2012) (log of NCIC transactions exempt from disclosure under federal Freedom of Information Act, 5 U.S.C. § 552 [b] [7] [E]); *Gerace* v. *Mandel,* 267 App. Div. 2d 386, 700 N.Y.S.2d 739 (1999) (disclosure of "rap sheets" compiled by state Division of Criminal Justice Services exempt from disclosure under state Freedom of Information Law); *State ex rel. Multimedia, Inc.* v. *Snowden,* 72 Ohio St. 3d 141 (1995) (NCIC "rap sheets" generated in investigation of police applicants exempt from disclosure under state and federal law); *State ex rel. Lippitt* v. *Kovacic,* 70 Ohio App. 3d 525, 591 N.E.2d 422 (1991) (42 U.S.C § 3789g prohibits disclosure of FBI "rap sheets"); see also *Ellerbe* v. *Andrews,* 623 So. 2d 41 (La. App. 1993) ("rap sheet" collected by state Bureau of Criminal Identification and Information not public record under state law, thus not discoverable by third parties in civil action).

Rather than preempting state law, the federal law is consistent with state law in this case. As stated previously, the limitations federal law places on disclosure of NCIC "rap sheet" data are mirrored by state law in § 29-164f. The act, § 1-210 (a), provides in relevant part:

*"Except as otherwise provided by any federal law or state statute,* all records maintained or kept on file by any public agency . . . shall be public records" and every person shall have the right to inspect, copy or receive a copy of such public records. (Emphasis added.) The NCIC printout in this case falls under the "except as otherwise provided by any federal law or state statute" exemption in § 1-210 (a).

The commission does not dispute that 28 U.S.C. § 534 gives the United States Attorney General the right to control and limit access to federal records, but contends that the NCIC printout became a state public record within the meaning of § 1-210 (a) by virtue of its delivery to and use by the state. The commission argues that the commissioner's agreement, as part of the compact, not to disseminate NCIC records to noncriminal justice agencies does not relieve the commissioner of his duty under the act to disclose the records requested by Wood and Collins because the state cannot contract away its obligations under the act.

The trial court's reasoning, and the commission's argument on appeal, that the state cannot contract away its obligations under the act by virtue of the compact, is misplaced. In so concluding, the court relied on *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 271, 579 A.2d 505 (1990). *Lieberman* concerned an agreement between the town of East Haven and one of its police officers, in which the police officer agreed to resign from his employment position in exchange for East Haven's agreement to destroy all records pertaining to the officer's alleged violations of rules and regulations of the East Haven police department. Id., 256. East Haven denied media requests to inspect and/or copy documents relating to the resignation. Id. Our Supreme Court held that "[o]nly certain independent library officials have been vested by the legislature with the authority to approve the destruction of public

records. The destruction of public records, therefore, is an illegal subject of bargaining, and any collective bargaining agreement, arbitration award or grievance settlement requiring such destruction is null and void." Id., 271. *Lieberman* is inapposite. *Lieberman* concerned a specific contract rather than a national compact, authorized by Congress and entered into by the General Assembly, which is codified by the state in § 29-164f and by the federal government in 42 U.S.C. § 14616. "[A]n interstate compact is not just a contract; it is a federal statute enacted by Congress." *Alabama* v. *North Carolina*, 560 U.S. 330, 130 S. Ct. 2295, 2312, 176 L. Ed. 2d 1070 (2010). Accordingly, in the present case, the state is not "contracting away" its obligations under the act but, rather, legislatively entered into a compact to participate in a federal program, which places limitations on the disclosure of NCIC printouts.

As the commission argues, the department perhaps can choose not to participate in the NCIC network. The state, however, and not only the department, has chosen to enter into the compact by virtue of § 29-164f and, thus, is bound by the provisions of the compact. The compact provides that information obtained from the NCIC database may be used only for official purposes and 28 U.S.C. § 534 provides for cancellation of the state's participation in the compact if unauthorized disclosure occurs. When the state accesses the NCIC database, its use of the NCIC records does not change the terms of the compact. The dissemination of NCIC printouts is governed by the compact and the NCIC printouts in this case are exempt from disclosure under § 1-210 (a).

The judgments are reversed only as to the NCIC printouts and the case is remanded with direction to render judgments sustaining the appeals of the Commissioner of Public Safety as to that claim; the judgments are affirmed in all other respects.

In this opinion the other judges concurred.