******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HAIDAR
MUSTAFA ABUSHAQRA
(AC 152069)

DiPentima, C. J., and Lavine and Mullins, Js.*

*Argued July 23, 2015—officially released April 5, 2016*

(Petition for Review from Superior Court, judicial district of Hartford, geographical area number twelve, Baldini, J.)

*Michael J. Dyer*, with whom, on the brief, was *Ryan P. Barry*, for the petitioner (Capital Bail Bonds, LLC).

*Christopher Malany*, supervisory assistant state's attorney, for the respondent (state).

*Benjamin C. Mizer*, principal deputy assistant attorney general, *Deirdre M. Daly*, United States attorney, and *Mark B. Stern*, *Charles W. Scarborough*, and *John B. Hughes*, filed a brief for the United States of America as amicus curiae.

*Opinion*

PER CURIAM. In this petition for review, brought pursuant to Practice Book § 77-1 and General Statutes § 51-164x (c), we are called upon to determine whether the trial court improperly (1) prohibited the petitioner, Capital Bail Bonds, LLC, from disseminating, disclosing, or otherwise using a report of the National Crime Information Center (NCIC report) and a Federal Bureau of Investigation (FBI) rap sheet in bond forfeiture proceedings, and (2) ordered the petitioner to lodge all copies of said documents with the court under seal. The petitioner claims that the court lacked the authority to enter such an order. We disagree and conclude that the court had the inherent authority both to prohibit the dissemination, disclosure, and use of these documents, and to order the petitioner to lodge them with the court under seal.

The following facts and procedural history are relevant to our analysis. The defendant, Haidar Mustafa Abushaqra, was arrested on June 28, 2011, and charged with two counts of larceny in the first degree. He was released on separate surety bonds that were executed by the petitioner. On February 1, 2012, the defendant failed to appear in court as ordered, and the court, *Taylor*, *J.*, ordered the bonds forfeited and raised the bail in each pending case to $1 million.

On September 3, 2014, the petitioner filed a motion to release its obligations under the bonds. In support of those requests, the petitioner also filed a motion to file a record under seal, requesting that the memorandum of law appended to the motion to release, as well as certain other documents, be filed under seal with the court pursuant to Practice Book § 11-20A.[1] In its memorandum of law in support of its motion to file record under seal, the petitioner represented to the court that "[t]here are certain statements and documents [referenced] within said motion that are highly privileged and it is undersigned counsel's belief that if they were released to the public, their release could jeopardize the health, safety and/or reputation of certain parties involved." The respondent state filed a written objection on September 22, 2014. The state was unaware of the content of both the petitioner's memorandum of law and the documents themselves at that time because it was not served with copies.

The parties appeared for argument before the court, *Baldini*, *J.*, on September 22, 2014. At that hearing, the petitioner's counsel elaborated on the nature of the documents it sought to be sealed: "First, there is a document that I've attached . . . that is generated by the FBI and that contains information that is relevant and material to the case at hand. And for confidentiality purposes I would like to refer to that document as document number one. And secondly there is a docu-

ment generated by the chief state's attorney's office under the [division] of criminal justice addressed to myself indicating that the FBI—in fact, a division of the FBI dealing with internal or international relations considers that document number one as a national security sensitive document and is not to be disclosed outside of law enforcement. The FBI also told the chief [state's attorney's] office that document number one is also law enforcement sensitive and is to be used for internal purposes only."

The petitioner's counsel repeatedly stated during this hearing that these documents are "national security sensitive" and "not to be distributed—disseminated outside of law enforcement." The court inquired how the petitioner came into possession of these materials. The petitioner's counsel represented that "they were inadvertently given to me." The state objected to the petitioner's motions, arguing that the petitioner had failed both to demonstrate that it was entitled to have its obligations released and that it was entitled to have the documents sealed. The state also contended that it was "arguing this motion at a significant disadvantage" because, at that time, it had not seen any of the documents. At the conclusion of the hearing, the court continued the matter until October 20, 2014, to afford itself an opportunity to conduct an in camera review of the content of these documents.

At the October 20, 2014 hearing, the court issued an interim order prohibiting *any* disclosure, dissemination, or use of the documents by the petitioner's counsel, including to the petitioner, but it did not order the documents to be lodged with the court at that time. The court afforded the petitioner additional time to conduct research concerning the court's authority to issue such an order and to prepare an objection to the court's interim order. The parties returned on March 11, 2015, at which time the petitioner and the state were heard, and the matter was taken under advisement.

On July 13, 2015, the court issued a memorandum of decision addressing the petitioner's motion to seal and its objection to the court's interim order. The court identified the documents the petitioner sought to have sealed as the defendant's FBI rap sheet and an NCIC report concerning the defendant.[2] The court also identified a number of reasons why a sealing order was appropriate, found that these reasons overrode the public's interest in viewing the documents, and found that there were no reasonable alternatives to a sealing order. The court ordered the petitioner to place all copies of the defendant's FBI rap sheet and NCIC report in a sealed envelope and to lodge said envelope with the court. The court further ordered that "[t]he parties are precluded from disseminating, publishing or otherwise disclosing the contents of this [o]rder and the court's memorandum of decision . . . for seventy-two (72)

hours from the date of this [o]rder. . . . Should any appeal be taken of this [o]rder within the seventy-two (72) hour period as provided by the Practice Book, such appeal shall operate as a further stay of the [o]rders set forth . . . above." The petitioner subsequently filed the present petition for review on July 16, 2015, requesting that this court "reverse the trial court's order precluding [it] from disseminating, publishing or otherwise disclosing the contents of the [documents] and remand the case to the trial court for further proceedings."

The parties appeared for oral argument before this court on July 23, 2015. On July 24, 2015, this court, sua sponte, ordered the parties to file briefs addressing the trial court's authority to preclude use of and reference to the defendant's FBI rap sheet and NCIC report, as well as the court's authority to require the petitioner to place all copies of these documents in the possession of the court. Subsequently, on September 16, 2015, this court invited the United States Attorney for the District of Connecticut to file a brief on behalf of the United States of America as amicus curiae. The amicus brief was filed on December 16, 2015.

This petition presents an unusual circumstance. The petitioner initially sought, by way of its September 3, 2014 motion to file record under seal, a sealing order of, among other things, the defendant's FBI rap sheet and NCIC report. The court ultimately ordered these documents to be sealed. In other words, the petitioner appears at first blush to have received the relief it requested. Nevertheless, it now claims that the court lacked the authority to order a blanket prohibition on *any* use and dissemination of these documents. The petitioner further claims that the court exceeded its authority when it ordered that these documents be turned over to the court. The petitioner argues that the Superior Court, as a constitutional court of general jurisdiction, may only act pursuant to explicit constitutional, statutory, or common-law authority. It contends that no such authority supports the court's orders in the present case. The state objects, arguing that use of the defendant's FBI rap sheet and NCIC report is strictly limited by federal law, namely, 28 U.S.C. § 534[3] and 42 U.S.C. § 14616,[4] and that the court, in recognition of these limitations, properly precluded the parties from using them. The state also argues that the court properly utilized its broad inherent authority to restrict the use of sensitive evidence. We agree with the state.

We begin with the standard of review. The only claim advanced by the petitioner is that the trial court *completely lacked* the authority to issue the order that it issued, not that it *improperly exercised* its authority. "Whether the trial court had the power to issue [an] order, as distinct from the question of whether the trial court properly exercised that power, is a question

involving the scope of the trial court's inherent powers and, as such, is a question of law. See, e.g., *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 14, 776 A.2d 1115 (2001) . . . . Accordingly, our review is plenary." *AvalonBay Communities, Inc.* v. *Planning & Zoning Commission*, 260 Conn. 232, 239–40, 796 A.2d 1164 (2002).

The petitioner claims that, in the absence of explicit authorization, the court was powerless both to order a blanket prohibition on dissemination, disclosure, and use of the documents, and to lodge all copies of the documents with the court under seal. We disagree. The trial court's authority is not limited by the rules of practice.[5] "The power of a court to manage its own affairs so as to achieve an orderly and expeditious disposition of cases *exists independently* of the power recognized by rule or statute." (Emphasis added.) *Talit* v. *Northwest Airlines, Inc.*, 58 Conn. App. 102, 107, 752 A.2d 1131 (2000). The appellate courts of this state consistently have recognized that the trial court has broad inherent authority to manage judicial proceedings in a variety of circumstances. See *State* v. *Jones*, 314 Conn. 410, 420, 102 A.3d 694 (2014) ("The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice. . . . This authority extends to determining the means by which the jury examines submitted exhibits." [Citation omitted; internal quotation marks omitted.]); *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 591 n.13, 923 A.2d 697 (2007) ("a trial court in this state has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated" [internal quotation marks omitted]); *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004) ("the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons" [internal quotation marks omitted]); *Fattibene* v. *Kealey*, 18 Conn. App. 344, 359–60, 558 A.2d 677 (1989) (in absence of rule of practice on point, trial court may rely on its inherent authority to manage proceedings). "Simply stated, [t]he inherent powers of . . . courts are those which are necessary to the exercise of all others." (Internal quotation marks omitted.) *Srager* v. *Koenig*, 42 Conn. App. 617, 620, 681 A.2d 323, certs. denied, 239 Conn. 935, 936, 684 A.2d 709 (1996).

After reviewing the record, briefs, and the court's memorandum of decision, we conclude that the court's inherent authority is broad enough to allow it to preclude use of the defendant's FBI rap sheet and NCIC

report, and to order these documents to be placed in the custody of the court. This case presents unique circumstances involving, by the petitioner's own statements, highly sensitive documents that are intended only for use by law enforcement professionals. See *Commissioner of Public Safety* v. *Freedom of Information Commission,* 144 Conn. App. 821, 828, 76 A.3d 185 (2013) ("28 U.S.C. § 534 makes clear that . . . NCIC information is not to be disseminated outside the receiving department or related agencies"). These documents, the petitioner acknowledges, were inadvertently disclosed and neither the state nor the federal government[6] intended to disseminate them to anyone outside of law enforcement. We conclude that the court had the inherent authority to enter appropriate orders to halt any further unintended dissemination of these highly sensitive documents. We therefore deny the petitioner's request for relief.

The petition for review is granted but the relief requested is denied.

* This petition originally was heard before a panel of this court consisting of Chief Judge DiPentima, Judge Lavine, and Judge Keller. Thereafter, Judge Keller disqualified herself and was replaced by Judge Mullins. Judge Mullins has read the record and briefs and listened to the recording of oral argument prior to participating in this decision.

[1] Practice Book § 11-20A provides in relevant part: "(a) Except as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public.

"(b) Except as provided in this section, and except as otherwise provided by law, including Section 13-5, the judicial authority shall not order that any files, affidavits, documents, or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited.

"(c) Upon written motion of any party, or upon its own motion, the judicial authority may order that files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding be sealed or their disclosure limited only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. An agreement of the parties to seal or limit the disclosure of documents on file with the court or filed in connection with a court proceeding shall not constitute a sufficient basis for the issuance of such an order. . . ."

[2] The court noted that "the NCIC is an electronic clearinghouse of crime data that can be accessed by law enforcement agencies nationwide. The NCIC helps criminal justice professionals apprehend fugitives, locate missing persons, recover stolen property, and identify terrorists. It also assists law enforcement officers in performing their official duties more safely and provides them with information necessary to aid in protecting the general public.

"The NCIC operates under a shared management agreement between the FBI and federal, state, local, and tribal criminal justice users. The NCIC database information is accessible in accordance with the National Crime Prevention and Privacy Compact . . . as set forth in 28 U.S.C. § 534 and 42 U.S.C. § 14616."

[3] "28 U.S.C. § 534 makes clear that . . . NCIC information is not to be disseminated outside the receiving department or related agencies . . . ." *Commissioner of Public Safety* v. *Freedom of Information Commission,* 144 Conn. App. 821, 828, 76 A.3d 185 (2013). "The principal use of the information is to assist in the detection and prosecution of offenders; it is also used by courts and corrections officials in connection with sentencing and parole decisions. As a matter of executive policy, the Department [of Justice] has generally treated rap sheets as confidential and, with certain exceptions, has restricted their use to governmental purposes." (Internal quotation marks omitted.) Id., 829, quoting *United States Dept. of Justice*

v. *Reporters Committee for Freedom of the Press*, 489 U.S. 749, 752, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989).

Section 534 (f) (1) of title 28 of the United States Code sets forth a narrow exception to the general rule that NCIC information is not to be disseminated outside of receiving departments or related agencies: "Information from national crime information databases consisting of identification records, criminal history records, protection orders, and wanted person records may be disseminated to civil and criminal courts for use in domestic violence or stalking cases. *Nothing in this subsection shall be construed to permit access to such records for any other purpose*." (Emphasis added.) As this court previously has observed, "[s]ubsection (f) (1) [of § 534] clearly demonstrates that access to NCIC records for any purpose not contained within the compact is not permitted." *Commissioner of Public Safety* v. *Freedom of Information Commission*, supra, 144 Conn. App. 828; see footnotes 2 and 4 of this opinion.

[4] 42 U.S.C. § 14616 sets forth the National Crime Prevention and Privacy Compact, which establishes the information sharing framework between various law enforcement agencies. Connecticut has adopted this compact. See General Statutes § 29-164f ("[t]he National Crime Prevention and Privacy Compact is hereby entered into and enacted into law with any and all of the states and the federal government legally joining therein"). Section 14616 of title 42 of the United States Code limits the use of NCIC reports and FBI rap sheets. For instance, 42 U.S.C. § 14616, art. IV (c), concerning authorized record disclosures, provides in relevant part: "Any record obtained under this Compact may be used only for the official purposes for which the record was requested. . . ." It also requires members of the compact to establish rules, procedures, and standards to "ensure that records obtained under this Compact are used only by authorized officials for authorized purposes . . . ." 42 U.S.C. § 14616, art. IV (c) (1); see also General Statutes § 29-164f, art. IV (c); *Commissioner of Public Safety* v. *Freedom of Information Commission*, 144 Conn. App. 821, 827, 76 A.3d 185 (2013).

[5] We note that although the court's order was grounded on the sealing provisions of Practice Book § 11-20A, we affirm on the ground that the court possesses the inherent authority to fashion orders necessary to manage judicial proceedings.

[6] In its amicus brief to this court, the United States took the position that the trial court had the authority to issue the order that it issued, and expressly requested this court to order the return of the defendant's FBI rap sheet and NCIC report. The only issue before this court, however, is whether the trial court had the authority to preclude use of these documents and order them to be lodged with the court. Thus, if the United States wishes to retrieve these documents, it must do so in the Superior Court.